IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| RYAN NOAH SHAPIRO,<br><br>    Plaintiff,<br><br>v.<br><br>DEPARTMENT OF JUSTICE,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 13-CV-00595<br>)<br>)<br>)<br>)<br>) |

## SECOND DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)  I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), in Winchester, Virginia. I have held this position since August 1, 2002. Prior to joining the Federal Bureau of Investigation ("FBI"), from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2)  In my official capacity as Section Chief of RIDS, I supervise approximately 270 employees who staff a total of ten (10) FBIHQ units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA, as most recently amended by the OPEN Government Act of 2007 and the OPEN FOIA Act of 2009; Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General and FBI policies and procedures;

judicial decisions; and Presidential and Congressional directives. My responsibilities also include the review of FBI information for classification purposes as mandated by Executive Order ("E.O.") 13526,[1] and the preparation of declarations in support of Exemption 1 claims under the FOIA.[2] I have been designated by the Attorney General of the United States as an original classification authority and a declassification authority pursuant to E.O. 13526, §§ 1.3 and 3.1. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)  Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. Specifically, I am familiar with the FBI's handling of FOIA requests that were received from plaintiff seeking access to records pertaining to Occupy Wall Street-related protests in Houston, Texas.

(4)  This declaration supplements, and hereby incorporates by reference the information previously provided in my first declaration dated July 16, 2013 ("First Hardy Declaration") (See Docket ["Dkt."] No. 9). The purpose of this declaration is to respond to specific issues raised by plaintiff in his Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss or, In the Alternative, for Summary Judgment ("Opposition"), including the adequacy of the FBI's search and to further elaborate on the FBI's justifications for the withholding of information pursuant to FOIA Exemptions (b)(1), (b)(3), (b)(6), (b) (7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(E).

---

[1] 75 Fed. Reg. 707 (2010).

[2] 5 U.S.C. § 552 (b)(l).

## ADEQUACY OF SEARCH

(5)     As I previously stated in the First Hardy Declaration, ¶ 22, the FBI's Central Records System ("CRS") is a centralized FBI records system consisting of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes. The CRS currently consists of over 116.2 million records. Given its comprehensive nature, the CRS is the principal search mechanism employed by RIDS to locate records responsive to FOIA requests.

(6)     The mechanism that the FBI uses to search the CRS is the Automated Case Support System ("ACS"), which itself is comprised of three integrated electronic applications: Investigative Case Management ("ICM"), Universal Index ("UNI"), and Electronic Case File ("ECF"). As relevant here, RIDS conducted an ACS search for records related to a similar FOIA request using multiple name variations as noted at ¶ 36 of the First Hardy Declaration, listing 43 separate search terms. These searches encompassed records located both at Headquarters and Field Offices. These ACS searches would identify any responsive main files as well as cross-references. *See* First Hardy Declaration at ¶ 23 for explanation of main files and cross-reference files. As a result of the ACS search no records were located.

(7)     In addition, although beyond normal searching policies and because of the nature of the request, the FBI took an additional step and conducted a text search of the ECF to identify all potentially responsive main and cross-reference files indexed under the 43 search terms. *See* First Hardy Declaration at ¶ 36. As a result of this search, the FBI located 12 pages of responsive records.

(8)     Plaintiff argues that the FBI "ignored all of the leads that were turned up by the documents." *See* Opposition, pg. 31. As previously stated in the First Hardy Declaration, ¶ 34, and contrary to plaintiff's claim, the FBI did follow-up with leads contained in the documents that

had been located through an initial search for records responsive to plaintiff's request. Specifically, the FBI processed and released to plaintiff the IIR and iWatch Report that are mentioned on Shapiro-11 and 13.

(9)     Plaintiff also challenge the FBI's search surmising that other documents must exist because of reference to an email that was not produced within the records released to plaintiff. *See* Opposition at pg. 31. It should be noted that while an email pertaining to a responsive document may be referenced within the records, the email may not have been indexed with any of the search terms the FBI used to locate records responsive to this request. The decision to index names other than subjects, suspects, and victims is a discretionary decision made by the FBI Special Agent ("SA") assigned to work on the investigation, the Supervisory SA ("SSA") in the field office conducting the investigation, and the SSA at FBIHQ. The FBI does not index every name or subject in its files; rather, it indexes only that information considered to be pertinent, relevant, or essential for future retrieval. *See* Hardy Declaration, ¶ 27. As such, unless this email was indexed with the words "Occupy Houston," or some other variable of the search terms used during processing of this request, the document would not come up in a text search.

(10)    Plaintiff also takes issue with the search, contending that the FBI did not explain how the search for the IIR was conducted and gave "no indication of whether responsive records would likely have been found anywhere else." *See* Opposition, pg. 32. In response, RIDS was actually following up on a lead contained in one of the responsive documents that described the IIR and iWatch Report. Thus, a request for those specific documents was sent to the appropriate unit. Any other additional documents would have been located through the FBI's reasonable search of the CRS as described in the First Hardy Declaration ¶¶ 22-27.

4

(11)     Plaintiff also complains that the search terms utilized by the FBI were "patently unreasonable." *See* Opposition, page 32. As set forth in my first declaration, the FBI searched using the most logical combination of terms. *See* First Hardy Declaration ¶¶ 35-36. Because of the generic nature of plaintiff's request, the FBI determined that the search terms would logically be found in responsive records, should they exist. These terms were not only searched in ACS, a text search of ECF was also conducted. Additionally, once the FBI realized plaintiff's request had been analyzed too specifically during the administrative phase, they conducted a search for the broader search term "Occupy Houston." *See* First Hardy Declaration, ¶ 36.

(12)     Plaintiff also takes issue with the search by stating that there is no indication that the FBI conducted a search regarding the source mentioned on Shapiro-13. *See* Opposition, pg. 31-32. The particular source mentioned on Shapiro-13 is a unit under the FBI's Directorate of Intelligence ("DI") Section within the National Security Branch ("NSB"). Any records belonging to this unit would have been located through a search of the CRS.

## THE FBI RELEASED ALL SEGREGABLE INFORMATION

(13)     As stated in my First Declaration, the FBI made every effort to provide plaintiff with all material in the public domain and with all reasonably segregable portions of released material. The FBI determined that with regard to the exempt information, the material is properly withheld pursuant to applicable FOIA Exemptions or so intertwined with protected material that additional segregation is not possible without revealing the underlying protected material. *See* First Hardy Declaration at ¶ 43.

## JUSTIFICATION FOR WITHHELD INFORMATION

(14)     As set forth in my first declaration, the FBI explained its justifications for withholding information in this case under Exemptions (b)(1), (b)(3), (b)(6), (b)(7)(A), (b)(7)(C),

(b)(7)(D), and (b)(7)(E).  5 U.S.C. § 552 (b)(1), (b)(3), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D) and (b)(7)(E).  The following information supplements the previous justifications and specifically responds to plaintiff's contentions in his Opposition.

### Exemption (b)(1)

(15)  In regards to plaintiff's argument pertaining to the FBI's use of repetitive arguments to justify the assertion of FOIA Exemption (b)(1) in other litigations, it is the FBI's practice to conduct document by document review to ensure classified information is properly marked and protected.  In this case, the FBI followed this protocol.  A review of the records, determined that certain information warrants classification at the "Secret" level.  The FBI's justification for withholding information pursuant to Exemption (b)(1) was set forth in detail in the First Hardy Declaration, ¶¶ 44-56.  To further explain the material that is being protected by Exemption (b)(1) would reveal the very nature of the information the FBI is trying to protect.  The fact that similar arguments have been used in other unrelated litigations does not make the argument inapplicable.  In fact, because many of the FBI's investigations are similar in nature, it is logical that the FBI would use the same argument in similar situations.

### Exemption (b)(3)

(16)  FOIA Exemption (b)(3) was properly asserted to protect information related to intelligence sources and methods utilized in the investigations at issue.  This information was properly classified at the "Secret" level.  Further, description of the specific nature of these records will defeat the purpose of the protection afforded under Exemption (b)(3) as prescribed by the National Security Act of 1947.  The First Hardy Declaration, ¶¶ 44-56 affirmatively state that the information at issue in these records is in fact sources and methods utilized in the national security investigations at issue.

**Exemption 7 Threshold**

(17)    This provides additional information and clarity to establish the nexus between the enforcement of federal law and the compilation of records withheld under Exemption 7.  As provided in my previous declaration, there are dual law enforcement purposes for the compilation of the responsive records in this case: "the FBI's general investigative authority" per 28 U.S.C. §§ 533 and 534 and the FBI's assigned "lead role in investigating terrorism and in the collection of terrorism threat information."  *See* Hardy Declaration, ¶ 62.  As discussed in detail below, these dual purposes are not based on general monitoring or the mere gathering of information, but grounded in the performance of core FBI law enforcement purposes.

(18)    First, regarding the FBI's "general investigative authority," the investigative records at issue in this case are a part of the FBI's CRS and concern documents compiled as a result of assistance the FBI rendered to various state and local law enforcement agencies which were investigating potential criminal activity by protestors involved with the "Occupy" movement in Houston.  The FBI assisted these agencies by collecting intelligence related to "Occupy" movement protests and sharing them with state and local law enforcement partners.  The FBI's assistance in these state and local criminal investigations is a core federal law enforcement function of the FBI authorized by law.  Specifically, the FBI may provide investigative assistance to state, local, and tribal law enforcement agencies "in the investigation of matters that may involve federal crimes or threats to the national security, or for such other purposes as may be legally authorized."  *The Attorney General's Guidelines for Domestic FBI Operations* (AGG-DOM), paragraph III.C.[3]  As pertinent here, the FBI's assistance would also relate to the

---

[3] *The Attorney General's Guidelines for Domestic FBI Operations* (AGG-DOM), paragraph III.C., September 29, 2008.  The AGG-DOM guidelines are issued under the authority of the Attorney General as provided in sections 509, 510, 533, and 534 of Title 28, U.S. Code and apply to domestic investigative and other activities as prescribed therein.

7

investigation of federal crimes such as domestic terrorism (18 U.S.C. § 2331) and advocating overthrow of government (18 U.S.C. § 2385).  As such, the responsive records herein were obtained and complied by the FBI in the exercise of its law enforcement authority.

(19)    The FBI is assigned the lead role in investigating terrorism and in the collection of terrorism threat information within the United States by 28 C.F.R. §0.85 and Annex II to National Security Presidential Directive 46.   In addition, the Intelligence Reform and Terrorism Prevention Act requires the President to establish an information sharing environment for sharing terrorism information in a manner that is consistent with national security and applicable legal standards pertaining to privacy and civil liberties.

(20)    Here, carrying out its responsibility as the lead counter terrorism agency in the United States to detect and thwart terrorism, the FBI, in concert with its state, local, and tribal law enforcement partners, shared information and focused law enforcement resources relevant to the investigation of reports of protests which would relate to the investigation of federal crimes such as domestic terrorism (18 U.S.C. § 2331) and advocating overthrow of government (18 U.S.C. § 2385).  These records contain dual law enforcement purposes.  These records are not relating to generalized law enforcement sharing.  The records were compiled while actively assisting state and local law enforcement agencies and assessing potential terrorist threats.

### Exemption (b)(7)(A)

(21)    The FBI asserted FOIA Exemption (b)(7)(A) to withhold in their entirety two (2) records that consist of a criminal and investigative nature.  These documents were Bates-stamped Shapiro-1 through 3 and Shapiro-14 through 17.  The FBI still asserts FOIA Exemption (b)(7)(A) to protect information contained within these documents.  These documents are intelligence reports.  An intelligence report is a text-based briefing or information-sharing product, generally

prepared for senior management officials to inform them about current threats. The underlying reporting and analysis is condensed in order to provide the audience with an essential understanding of the threat and proposed actions.

(22) The SA overseeing the investigations at issue advised that some of the information contained in these documents pertain to pending investigations which are currently being investigated with the assistance of active FBI sources. A premature release of this information will not only expose the source, but will reveal the target, focus, and scope of the investigation negatively impacting this ongoing investigation. Moreover, the information that was provided to the FBI in these records is also withheld pursuant to FOIA Exemption (b)(7)(D).

(23) The FBI conducted a further review of these documents marked Shapiro-1 through 3 and Shapiro-14 through 17 to release any segregable information. This review concluded that no information could be segregated without negatively impacting the on-going proceedings, as related in the preceding paragraph.

### Exemptions (b)(6) and (b)(7)(C)

(24) The FBI carefully balanced the privacy interests of each individual against the public interest in disclosure as articulated in the Hardy Declaration. *See* First Hardy Declaration, ¶ 64. Nevertheless, with respect to the names and indentifying information of individuals who provided information to the FBI,[4] plaintiff alleges that this information has been wrongly withheld by the FBI. The FBI balanced the privacy interest of the third parties who provided information to the FBI in the records at issue. When balancing these individuals' privacy against the public interest in disclosure, the FBI determined that these individuals have a well recognized privacy interest, which is not outweighed by any public interest in disclosure. Specifically, among other

---

[4] Plaintiff is not challenging redactions to the names and/or identifying information of FBI Special Agents and support personnel, the names of third parties who are merely mentioned, or the names of non-FBI federal government personnel. *See* Opposition, pg. 27.

9

things, these individuals have a substantial interest in the nondisclosure of their identities and their connection with these particular incidents, because of the potential for future retaliation, embarrassment, harassment, or unnecessary judgment. There is no basis on the face of the records at issue to determine that these names and or identifying information bear in any way upon the FBI's performance of its statutory duties, or contribute significantly to the public understanding of its operations or activities. Moreover, the name and or identifying information of these third parties individuals who provided information to law enforcement in these records is also withheld pursuant to FOIA Exemption (b)(7)(D).

### Exemption (b)(7)(D)

(25)    In the records responsive to plaintiff's requests, the FBI relied upon exemption (b)(7)(D) to withhold the names or identifying information of individuals who provided information to the FBI about potential criminal activities pursuant to an express agreement of confidentiality. Specifically, the confidential sources at issue in these records are established sources for which the FBI has assigned specific source symbol numbers. This is evident from the face of the records; which are "Confidential Human Source Reporting Documents." Only established sources of the FBI receive source symbol numbers. The fact that a source symbol number is assigned to the sources at issue in this case is a clear indication of the confidentiality agreement between these sources and the FBI.

(26)    The FBI has also protected names and identifying information of third party individuals who provided information to the FBI under circumstances where a promise of confidentiality can be implied. Specifically, these sources are individuals who are members of organized violent groups. As such, they come in contact with criminal elements and share information that such elements believe is not intended for disclosure to law enforcement.

Information provided by these sources is singular in nature due to their source closeness to criminal elements. With all certainty, these individuals will not share this information with any law enforcement agency if they are aware that their identities and the information they provided will be further disclosed. On the face of the documents at issue, it was appropriate for the FBI to infer an expectation of confidentiality given the seriousness of the potential crime, the position of the sources, and the information they provided.[5]

### Exemption (b)(7)(E)

(27)    The FBI has withheld the mention of sensitive law enforcement techniques that the FBI uses to obtain invaluable intelligence information in current criminal and national security investigations. While the techniques may be known by the public in a general sense, the technical analysis of these sensitive law enforcement techniques, to include the specifics of how and in what setting they are employed, is not generally known to the public. Revealing the techniques, potential targets of the techniques, and/or the nature of the information gleaned via their use in the context of this material would effectively reveal specifics of how, and in what settings, the techniques are employed. As a result, criminal targets would be better able to avoid detection by developing countermeasures to circumvent the ability of law enforcement officials to use the techniques, thus rendering them useless to the FBI and other law enforcement agencies. Revealing details about these sensitive law enforcement techniques would compromise a crucial means of collecting intelligence information and severely hamper the FBI's law enforcement efforts to detect and apprehend individuals who seek to violate the United States criminal and

---

[5] While preparing this declaration, it was noted that on Bates page Shapiro-13, (b)(7)(D)-2 was inadvertently asserted for names, identifying data and/or information provided by individuals under an "express" assurance of confidentiality when (b)(7)(D)-1 should have been asserted for names, identifying data and/or information provided by individuals under an "implied" assurance of confidentiality. This withholding is supported by the same criteria that were reflected in the First Hardy Declaration, ¶ 78.

national security laws; therefore, this information is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).

(28)    The FBI has withheld the titles of certain units that may be focused on investigating threats to national security. Revealing which FBI units perform which functions and investigative duties may alert individuals to the type and level of focus of particular activities. Additionally, for some units, the name also reveals the specific investigative technique in which the unit specializes, and it is a technique which the FBI seeks to protect. For example, and hypothetically, suppose the FBI had a unit whose mission it was to penetrate and monitor the food buying habits of individuals suspected of hoarding food because they were warned of a terrorist attack. If the name of this unit was the Supermarket Cyber Unit, that name would tipoff to individuals that food purchasing was monitored, a technique not generally known to the public. Because this information, if known, could reasonably be expected to reveal the FBI's strategies and approaches to threats to national security, and thereby risk circumvention of the law, the FBI withheld this information pursuant to Exemption (b)(7)(E).

(29)    Plaintiff argues that the FBI redacted the handling instructions and the address of Intelligence Watch on Shapiro-13 and that this information bears no connection to law enforcement. The FBI properly withheld an internal address and phone number used daily and routinely by the FBI during the performance of the FBI's law enforcement mission. The relative benefit of these techniques and/or procedures could be diminished if the actual information is revealed in this record. Release of this phone number and internal web address could subject the FBI to massive, disruptive, and misleading amounts of communications as well as harassment and threats. It could also enable circumvention of the law by allowing criminals to gain access to internal communication channels used by the FBI to communicate internally. As such, release of

this number and the web address would clearly disrupt official business by impeding the ability of the FBI to conduct and conclude law enforcement investigations in a timely matter. As stated in the First Hardy Declaration the FBI properly asserted FOIA Exemption (b)(7)(E) to protect this information. *See* First Hardy Declaration, ¶ 84

(30) Plaintiff speculation pertaining to the FBI's redaction of the handling instructions is incorrect. On Shapiro-13, the FBI asserted FOIA Exemption (b)(7)(E) to protect information pertaining to a specific law enforcement technique utilized to conduct national security investigations. As stated in the First Hardy Declaration, to provide additional details pertaining to this technique will reveal the very nature of it. *Id.*

## SEPARATE RESPONSES

(31) This paragraph addresses plaintiff's complaint that they were unable to determine which Bates-stamped pages related to which of the three requests. The FBI made two separate releases to plaintiff on June 24, 2013. The first release, which relates to FOIPA request number 1206188-000 as indicated in the subject line of the letter, consists of 12 reviewed pages. These pages are Bates-stamped Shapiro-1-12. *See* First Hardy Declaration, Ex. P. The second release, which relates to FOIPA request number 1205920-002 as indicated in the subject line of the letter, consists of 5 reviewed pages. These pages are Bates-stamped Shapiro-13-17. *Id.*

## CONCLUSION

(32) The FBI has released to plaintiff all reasonably segregable, nonexempt information responsive to plaintiff's FOIA requests subject to this litigation. Upon request, the FBI will provide to the Court copies of the redacted information for *in camera* review if necessary.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 30th day of July, 2013.

DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia