**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **RYAN NOAH SHAPIRO,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )     **Civil Action No. 13-595 (RMC)** |
| | ) |
| **U.S. DEPARTMENT OF JUSTICE,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## OPINION

Ryan Noah Shapiro sues the Federal Bureau of Investigation (FBI) under the

Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy Act (PA), 5 U.S.C. § 552a,

to compel the release of records concerning "Occupy Houston," an offshoot of the protest

movement and New York City encampment known as "Occupy Wall Street." Mr. Shapiro seeks

FBI records regarding Occupy Houston generally and an alleged plot by unidentified actors to

assassinate the leaders of Occupy Houston. FBI has moved to dismiss or for summary

judgment.[1] The Motion will be granted in part and denied in part.

## I. FACTS

Ryan Noah Shapiro is a doctoral candidate in the Department of Science,

Technology, and Society at the Massachusetts Institute of Technology. Compl. [Dkt. 1] ¶ 2. In

early 2013, Mr. Shapiro sent three FOIA/PA requests to FBI for records concerning Occupy

Houston, a group of protesters in Houston, Texas, affiliated with the Occupy Wall Street protest

movement that began in New York City on September 17, 2011. *Id.* ¶¶ 8-13. Mr. Shapiro

---

[1] FBI is a component of the Department of Justice (DOJ). While DOJ is the proper defendant in
the instant litigation, the only records at issue here are FBI records. For ease of reference, this
Opinion refers to FBI as Defendant.

explained that his "research and analytical expertise . . . [concerns] conflicts at the nexus of American national security, law enforcement, and political dissent," and that he planned to "disseminate . . . urgent information [regarding Occupy Houston] to the public." Mot. to Dismiss or for Summ. J. (MSJ) [Dkt. 9], Decl. of David M. Hardy (Hardy Decl.) [Dkt. 9-1], Ex. A (Request No. 1205920-000) [Dkt. 9-2] at 2.[2] FBI processed and responded to these requests, labeling them Request Nos. 1205920-000, 1206188-000, and 1205920-001. Mr. Shapiro now challenges FBI's response to each Request.

**A. Request Nos. 1205920-000 and 1206188-000**

By letters dated January 4, 2013, Mr. Shapiro sent two requests to FBI seeking materials related to the Occupy protests in Houston, Texas.[3] The first, which FBI designated as Request No. 1205920-000, sought:

> any and all records that were prepared, received, transmitted, collected and/or maintained by . . . FBI, the Terrorist Screening center, the National Joint Terrorism Task Force, or any Joint Terrorism Task Force relating or referring to *a potential plan to 'gather intelligence against the leaders of [Occupy Wall Street-related protests in Houston, Texas] and obtain photographs, then formulate a plan to kill the leadership [of the protests] via suppressed sniper rifles.'*

---

[2] David M. Hardy, Section Chief of the Record/Information Dissemination Section (RIDS), Records Management Division (RMD) of FBI, Hardy Decl. ¶ 1, provided two declarations in support of FBI's Motion, *see* Hardy Decl.; Reply [Dkt. 13], Ex. 1 (Supp. Hardy Decl.) [Dkt. 13-1].

[3] Mr. Shapiro sent three iterations of both Requests to FBI. On December 31, 2010, he sent two requests. Compl. ¶¶ 16-19. On January 4, 2013, Mr. Shapiro withdrew those requests, and substituted a second set of requests with a minor correction. *Id.* ¶¶ 20-21. Concerned that his failure to sign the requests would impede FBI's expedited processing of them, Mr. Shapiro re-sent the two January 4 requests on that same date. Except for the addition of his signature, this third submission was identical to the second set. *Id.* ¶ 22. Mr. Shapiro asked FBI to respond only to the third submission of the two requests. *Id.* ¶¶ 24-25.

*See* Request No. 1205920-000 at 1 (alterations and emphasis in original). Mr. Shapiro stated that

the alleged assassination plan was discussed in other FBI documents, which had been released

through a prior FOIA request. *See id.* at 1. He attached five pages from the aforementioned FBI

documents to his request, all of which were heavily redacted. *See id.* at 11-15. Characterizing

his request as presented under FOIA and PA, *id.* at 1, Mr. Shapiro demanded that FBI search

several filing systems, including its Electronic Surveillance (ELSUR) indices, *id.* at 4-7. He also

requested expedited processing and a fee waiver. *Id.* at 2, 9-10.

Mr. Shapiro's second request for records, which FBI designated Request No.

1206188-000, asked for:

> any and all records that were prepared, received, transmitted,
> collected and/or maintained by . . . FBI, the Terrorist Screening
> Center, the National Joint Terrorism Task Force, or any Joint
> Terrorism Task Force relating or referring **to Occupy Houston,**
> **any other Occupy Wall Street-related protests in Houston, Texas,**
> **and law enforcement responses to the above protests.**

*See* Hardy Decl., Ex. E (Request No. 1206188-000) [Dkt. 9-2] at 1 (emphasis in original). Mr.

Shapiro stated that Request No. 1206188-000 was intended to include any assassination plots

against leaders of Occupy Wall Street in Houston. *Id.* at 1. Again, he characterized the request

as presented under FOIA and PA, demanded that FBI search its ELSUR indices, among other

indices, and sought expedited processing and a fee waiver. *Id.* at 1-2, 5-7, 9-10.

On February 28, 2013, FBI responded to both Requests with similar letters. Each

letter stated that FBI had searched its Central Records System (CRS), and those searches had not

located any "main file records responsive to the FOIA" request. *See* Hardy Decl., Ex. B [Dkt. 9-

2] at 1 & Ex. F [Dkt. 9-2] at 1. FBI informed Mr. Shapiro that he either could provide additional

information, for which FBI would conduct an additional search, or could appeal its response to DOJ's Office of Information Policy (OIP) within sixty days.

Mr. Shapiro chose to appeal. *See* Hardy Decl., Ex. C [Dkt. 9-2] & Ex. G [Dkt. 9-2]. It appears from the record that OIP never decided the appeal on Request No. 1205920-000 before it closed the file on June 26, 2013. Hardy Decl. ¶ 9 & n.3. Conversely, with respect to Request No. 1206188-000, it is clear that OIP affirmed FBI's response and informed Mr. Shapiro of its decision on May 24, 2013. Hardy Decl., Ex. I [Dkt. 9-2].

FBI subsequently reexamined the search that it had conducted for records responsive to Request No. 1206188-00. While FBI first had interpreted Request No. 1206188-000 as seeking only law enforcement responses to protests in Houston related to Occupy Wall Street, it revised its interpretation and conducted an additional search for *all* records referring to Occupy Houston. The additional search produced twelve pages of responsive records. On June 24, 2013, FBI informed Mr. Shapiro that it was releasing, in part, four of the twelve pages of responsive records, and entirely withholding the remaining eight pages. FBI cited FOIA Exemptions (b)(1), (b)(3), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(E) as the bases for withholding information contained in these records. Hardy Decl. ¶ 15; *see also* Hardy Decl., Ex. J [Dkt. 9-2].

**B. Request No. 1205920-001**

Mr. Shapiro submitted a third, dual FOIA/PA Request to FBI on February 3, 2013. This Request sought "any and all records that were prepared, received, transmitted, collected and/or maintained by . . . FBI, the Terrorist Screening Center, the National Joint Terrorism Task Force, or any Joint Terrorism Task Force relating or referring to the information

source redacted (by . . . FBI) and highlighted (by [Mr. Shapiro]) in" a five-page document which

Mr. Shapiro attached to his Request. Hardy Decl. ¶ 16 & n.5; *see also* Hardy Decl., Ex. K

(Request No. 1205920-001) [Dkt. 9-2]. Notably, the attached document was identical to the

document that Mr. Shapiro had attached to Request No. 1205920-000. The only difference was

that Mr. Shapiro had highlighted the following paragraphs:

> An identified REDACTED as of October planned to engage in sniper attacks against protestors [sic] in Houston, Texas, if deemed necessary. An identified REDACTED had received intelligence that indicated the protesters in New York and Seattle planned similar protests in Houston, Dallas, San Antonio, and Austin, Texas. REDACTED planned to gather intelligence against the leaders of the protest groups and obtain photographs, then formulate a plan to kill the leadership via suppressed sniper rifles. (Note: protests continued throughout the weekend with approximately 6000 persons in NYC. 'Occupy Wall Street' protests have spread to about half of all states in the US, over a dozen European and Asian cities, including protests in Cleveland 10/6-8/11 at Willard Park which was initially attended by hundreds of protestors [sic]). . . .

> On 13 October 2011, writer sent via email an excerpt from the daily REDACTED regarding FBI Houston's REDACTED to all IAs, SSRAs and SSA REDACTED. This REDACTED identified the exploitation of the Occupy Movement by REDACTED interested in developing a long-term plot to kill local Occupy leaders via sniper fire.

*Id.* at 12-16. As before, Mr. Shapiro asked that the ELSUR indices be searched, and that he

receive expedited processing and a fee waiver. *Id.* at 2, 5, 9-10. This letter was labelled by FBI

as Request No. 1205920-001. *See* Hardy Decl., Ex. L [Dkt. 9-2].

FBI responded on March 8, 2013, telling Mr. Shapiro that the records sought

under Request No. 1205920-001 pertained to another individual, and that "disclosure of third

party information is considered an unwarranted invasion of privacy." *Id.* at 1. FBI further

explained that records containing third-party information are exempt from disclosure unless there is "proof of death or a privacy waiver from the individual[] involved." *Id.* FBI also advised Mr. Shapiro that he had sixty days from the date of the letter to appeal to OIP. *Id.*

By letter dated March 13, 2013, Mr. Shapiro appealed FBI's response to Request No. 1205920-001. *See* Hardy Decl., Ex. M [Dkt. 9-2]. Before OIP reached a decision regarding Mr. Shapiro's appeal,[4] FBI conducted an additional search for records concerning the highlighted portions of Request No. 1205920-001. Hardy Decl. ¶ 20. This search identified five pages of responsive records, of which FBI released one page in part via a letter dated June 24, 2013. *See* Hardy Decl., Ex. O [Dkt. 9-2].[5] FBI told Mr. Shapiro that it was withholding information pursuant to FOIA Exemptions (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(E). Hardy Decl. ¶ 20.

### C. Overview of the Document Production

In total, FBI identified seventeen pages of responsive records, producing five of those pages in part and entirely withholding twelve pages. FBI Bates-numbered the produced records, stamping each page sequentially Shapiro-1 through Shapiro-17.[6] *Id.* ¶¶ 37, 39. Mr.

---

[4] OIP closed its file on the appeal of Request No. 1205920-001 on June 26, 2013. Hardy Decl. ¶ 19 n.6.

[5] The subject line of the June 24, 2013 letter references Request No. 1205920-002, which appears to be a scrivener's error. The Court will refer to this letter as regarding Request No. 1205920-001.

[6] Mr. Shapiro grouses that in "aggregating all of the documents responsive to [his] three requests and Bates-numbering them consecutively," FBI has made it "impossible to tell which documents are responsive to which request." Opp'n [Dkt. 10] at 33. His complaint is unjustified. In separate letters, FBI clearly identified to which Request each document responds. *See* Exs. J & O. Were there any possible confusion, Mr. Hardy's Supplemental Declaration rectifies it. Mr. Hardy confirms that the twelve pages produced in response to Request No. 1206188-000 are Bates-stamped Shapiro-1 through -12, and the five pages produced in response to Request No. 1205920-001 are Bates-stamped Shapiro-13 through -17. Supp. Hardy Decl. ¶ 31.

Hardy declares that FBI "sought to achieve maximum disclosure consistent" with FOIA, and therefore produced redacted pages where possible. *Id.* ¶ 38. Accordingly, for records produced in part, FBI annotated the redacted information with codes that indicated the claimed FOIA Exemptions. *See, e.g.*, Hardy Decl., Ex. P (Doc. Production) [Dkt. 9-2] at Shapiro-9. In his Declarations, Mr. Hardy provides detail, such as the statutory provision at issue for each claimed Exemption and the applicable case law, and includes footnotes that cross-reference the relevant Bates numbers. *See, e.g.*, Hardy Decl. ¶¶ 57-60. If FBI withheld a page in its entirety, the page was replaced with a "Deleted Page Information Sheet," which identifies, *inter alia*, the bases for the withholding. *See, e.g.*, Doc. Production at Shapiro-1.

### D. The Instant Litigation

Mr. Shapiro filed the instant lawsuit on April 29, 2013. He alleges that FBI violated FOIA by: (1) failing to search adequately for, and produce records responsive to, each of his Requests; (2) invoking FOIA exemptions improperly; (3) failing to respond timely with a determination on his appeals;[7] and (4) neglecting to respond to his requests for a fee waiver.[8] Compl. ¶¶ 45-48. Mr. Shapiro seeks an order directing FBI to produce the records that he requested; he also seeks attorney fees and other litigation costs. *Id.* at 9. FBI supports its motion to dismiss, or for summary judgment, with Declarations from Mr. Hardy. Mr. Shapiro opposes, and has asked the Court for oral argument, Notice of Oral Arg. Request [Dkt. 14], and for leave to file a surreply, Mot. to File Surreply [Dkt. 15]. He also has filed notice of a decision that he says is "substantially similar" to the present case. Notice of Supp. Authority [Dkt. 16] (citing

[7] This portion of Mr. Shapiro's Complaint was mooted once he filed the instant lawsuit.

[8] Although the Requests relied on FOIA and PA, this lawsuit focuses exclusively on FOIA and neither party addresses PA in their briefs. The Court deems any PA claim waived. *FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997); *Stephenson v. Cox*, 223 F. Supp. 2d 119, 121 (D.D.C. 2002).

*ACLU v. FBI*, Civ. No. 12-03728, 2013 WL 3346845 (N.D. Cal. July 1, 2013)).  FBI opposes

Mr. Shapiro's request for leave to file a surreply.  Opp'n to Surreply [Dkt. 17].

## II. LEGAL STANDARDS

### A.  Motion to Dismiss

FBI asserts two bases for dismissing this suit.  First, FBI contends that because it

conducted adequate searches and released all non-exempt records, this case is moot.  Second,

FBI claims that Mr. Shapiro has failed to state a claim under FOIA.

#### 1.  Lack of Jurisdiction Due to Mootness

FBI asserts that the Court lacks jurisdiction because Mr. Shapiro's claims are

moot, *i.e.*, FBI conducted adequate searches and released all non-exempt records.  A motion to

dismiss for mootness is properly brought under Federal Rule of Civil Procedure 12(b)(1).  *Flores*

*ex rel. J.F. v. District of Columbia*, 437 F. Supp. 2d 22, 27 (D.D.C. 2006).  Because FBI did not

release all responsive documents to Mr. Shapiro, and redacted information from documents that

were released, the Court finds that his claims are not moot and that the motion to dismiss under

Rule 12(b)(1) is without merit.

#### 2.  Failure to State a Claim

FBI also contends that Mr. Shapiro failed to state a FOIA claim because it has

searched for records and released all that are not exempt from disclosure.  A motion to dismiss

for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) challenges the

adequacy of a complaint on its face.  A complaint must be sufficient to "give the defendant fair

notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citation omitted).

FBI's motion to dismiss for failure to state a claim ignores the admitted facts, as alleged in the Complaint, that Mr. Shapiro requested documents that have been located but not released or not released in full. He contests FBI's claim that FOIA exemptions apply. While the merits of his allegations are to be determined, Mr. Shapiro clearly has stated a claim. The Court finds that the motion to dismiss for failure to state a claim is without merit.

### B. Motion for Summary Judgment

FBI also contends that it is entitled to summary judgment because there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, a court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "[t]he mere existence of a scintilla of evidence" in support of its position. *Id.* at 252.

FOIA cases are typically and appropriately decided on motions for summary judgment. *Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993); *Rushford v. Civiletti*, 485 F. Supp. 477, 481 n.13 (D.D.C. 1980), *aff'd*, *Rushford v. Smith*, 656 F.2d 900 (D.C. Cir. 1981). In a FOIA case, a court may award summary judgment solely on the basis of information provided by the agency in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate

that the information withheld logically falls within the claimed exemption, and are not

controverted by either contrary evidence in the record nor by evidence of agency bad faith."

*Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Vaughn v. Rosen*,

484 F.2d 820, 826-28 (D.C. Cir. 1973) (requiring agencies to prepare an itemized index

correlating each withheld document, or portion thereof, with a specific FOIA Exemption and the

relevant part of the agency's nondisclosure justification). An agency must demonstrate that

"each document that falls within the class requested either has been produced, is unidentifiable,

or is wholly [or partially] exempt" from FOIA's requirements. *Goland v. CIA*, 607 F.2d 339,

352 (D.C. Cir. 1978) (internal quotation marks and citation omitted).

### III. ANALYSIS

At the outset, the Court notes that FBI has not filed a traditional itemized *Vaughn*

index. However, the Hardy Declarations, taken together, are "sufficiently specific, detailed, and

separable to satisfy [FBI's] burden under *Vaughn* because the [Declarations] provide[] 'a

reasonable basis to evaluate [each] claim of privilege.'" *Hodge v. FBI*, 764 F. Supp. 2d 134, 141

(D.D.C. 2011) (quoting *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006)), *aff'd*,

703 F.3d 575 (D.C. Cir. 2013); *see also Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 349 (D.C.

Cir. 1987) (explaining that the Circuit's "post-*Vaughn* opinions make clear" that a *Vaughn* index

is evaluated in terms of its function rather than form).

### A. FOIA Generally

FOIA requires federal agencies to release government records to the public upon

request, subject to nine listed exceptions. *See* 5 U.S.C. § 552(b); *Wolf v. CIA*, 473 F.3d 370, 374

(D.C. Cir. 2007). To prevail in a FOIA case, the plaintiff must show that an agency has

(1) improperly (2) withheld (3) agency records. *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989); *United We Stand Am., Inc. v. IRS*, 359 F.3d 595, 598 (D.C. Cir. 2004). FOIA authorizes suit only against federal agencies and limits the remedy for the improper withholding of records to injunctive relief. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980); *see also* 5 U.S.C. § 552(a)(4)(B) & (f)(1). A district court may only order the agency to produce erroneously withheld records. *See, e.g., Kennecott Utah Copper Corp. v. U.S. Dep't of the Interior*, 88 F.3d 1191, 1203 (D.C. Cir. 1996) (finding FOIA only calls for releasing records to a complainant, not publication in the Federal Register). Once all requested records have been produced, there is no longer a case or controversy and a FOIA action becomes moot. *See Armstrong v. Exec. Office of the President*, 97 F.3d 575, 582 (D.C. Cir. 1996).

An agency defending a FOIA case must show that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information. *See Sanders v. Obama*, 729 F. Supp. 2d 148, 154 (D.D.C. 2010), *aff'd, Sanders v. U.S. Dep't of Justice*, No. 10-5273 (D.C. Cir. Apr. 21, 2011). The adequacy of a search is measured by a standard of reasonableness and depends on the individual circumstances of each case. *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990). The question is not whether other responsive records may exist, but whether the search itself was adequate. *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994).

Thus, to rebut a challenge to the adequacy of a search, an agency need only show that "the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201

(D.C. Cir. 1991) (citing *Meeropol v. Meese*, 790 F.2d 942, 950-51 (D.C. Cir. 1986)).  There is no requirement that an agency search every record system, but the agency must conduct a good faith, reasonable search of those systems of records likely to possess requested records.  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

An agency may prove the reasonableness of its search through a declaration by a responsible agency official, so long as the declaration is reasonably detailed and not controverted by contrary evidence or evidence of bad faith.  *Military Audit Project*, 656 F.2d at 738.  An agency affidavit can demonstrate reasonableness by "setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched."  *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999).  Agency declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."  *SafeCard*, 926 F.2d at 1200 (internal quotation marks and citation omitted); *see also id.* at 1201 ("Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them.").  An affiant who is in charge of coordinating an agency's document search efforts is the most appropriate person to provide a comprehensive affidavit in FOIA litigation.  *Id.*  Further, declarations that contain hearsay in recounting searches for documents are generally acceptable.  *Kay v. FCC*, 976 F. Supp. 23, 34 n.29 (D.D.C. 1997), *aff'd*, 172 F.3d 919 (D.C. Cir. 1998) (Table).

Once an agency has provided adequate affidavits, a plaintiff must demonstrate the lack of a good faith search.  *See Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993).  If the record raises substantial doubt as to the reasonableness of the search, especially in light of "well-

defined requests and positive indications of overlooked materials," then summary judgment may be inappropriate. *Founding Church of Scientology of Washington, D.C. v. NSA*, 610 F.2d 824, 837 (D.C. Cir. 1979). However, FOIA "was not intended to reduce government agencies to full-time investigators on behalf of requesters." *Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 27 (D.D.C. 2000) (internal quotation marks and citation omitted). Agencies are not required to "organize documents to facilitate FOIA responses," *Goulding v. IRS*, Civ. No. 97-C-5628, 1998 WL 325202, at *5 (N.D. Ill. June 8, 1998) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 162 (1975)); *see also Blakey v. Department of Justice*, 549 F. Supp. 362, 366-67 (D.D.C. 1982) ("FOIA was not intended to compel agencies to become ad hoc investigators for requesters whose requests are not compatible with their own information retrieval systems."), *aff'd*, 720 F.2d 215 (D.C. Cir. 1983) (Table), and FOIA does not require agencies to create or retain documents, *Moore v. Bush*, 601 F. Supp. 2d 6, 15 (D.D.C. 2009). Further, an agency is not required to undertake a search that is so broad as to be unduly burdensome. *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 891 (D.C. Cir. 1995). "[I]t is the requester's responsibility to frame requests with sufficient particularity . . . ." *Judicial Watch*, 108 F. Supp. 2d at 27 (internal quotation marks and citation omitted). An agency's search must be evaluated in light of the request made. The agency is "not obliged to look beyond the four corners of the request for leads to the location of responsive documents." *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996).

## B. Adequacy and Scope of FBI's Search

The Hardy Declarations make clear that FBI conducted good faith and reasonable searches of its records systems likely to possess records responsive to Mr. Shapiro's requests.[9] In responding to the three Requests, FBI searched CRS and ELSUR. CRS is an electronic repository for information compiled for law enforcement purposes as well as administrative, applicant, criminal, personnel, and other files. Hardy Decl. ¶ 22. ELSUR is a separate system of records used to maintain information on a subject whose electronic and/or voice communications have been intercepted as a part of consensual or court-ordered wiretap. *Id.* ¶ 28. CRS is searched via the Automated Case Support System (ACS), *id.* ¶ 22, which consists of the Investigative Case Management, Electronic Case File (ECF), and Universal Index software applications, *id.* ¶ 26, and is accessed through General Indices, which are searchable by subject, *id.* ¶¶ 23-24. ELSUR indices also are automated, but constitute a separate system of records from CRS and cannot be retrieved through either the General Index or CRS. *Id.* ¶¶ 29-30.

With respect to Request No. 1205920-000, FBI searched ELSUR and conducted a text search of ECF for the term "Occupy Houston" as it relates to the assassination plot alleged in Mr. Shapiro's request. *Id.* ¶¶ 32-33. Mr. Hardy states that FBI does not ordinarily conduct a text search of ECF, but did so here because it provided a more comprehensive search of CRS. *Id.* ¶ 32. None of these searches turned up responsive records. *Id.* ¶ 33.

In its search related to Request No. 1205920-001, Mr. Hardy states that FBI "again" reviewed the passages highlighted by Mr. Shapiro and contacted the "appropriate unit

---

[9] Except for the records for which FBI invokes FOIA Exemption 7, the Court finds the Hardy Declarations sufficiently detailed so that *in camera* review of the underlying documents is unnecessary. *See ACLU v. U.S. Dep't of Defense*, 628 F.3d 612, 627 (D.C. Cir. 2011).

[that] handles the reports referenced" therein. *Id. ¶ 34.* This search resulted in the identification of five pages of responsive records.

As for Request No. 1206188-000, FBI searched CRS and conducted a text search of ECF using the term "law enforcement responses and Occupy Houston." *Id. ¶ 35.* Drawing on a similar FOIA request from 2011, FBI also searched for the following terms: "Occupy Movement/Northern California," "Occupy Oakland," "Occupy San Francisco," "Occupy Cal," "Occupy UC Davis," "OWS," "Occupy Wall," "Occupy Movement," "Occupy Encampments," "Occupy Encampment," "Occupy McPherson," "Occupy Zuccotti Park," "Occupy New York City," "Occupy DC," "Occupy Portland," "Occupy Sacramento," "Occupy Salt Lake City," "Occupy Seattle," "Occupy Atlanta," "Occupy San Jose," "Occupy Boston," "Occupy Los Angeles," "Occupy Indianapolis," "Occupy Baltimore," "Occupy St. Louis," "Occupy Cincinnati," "Occupy Providence," "Occupy Austin," "Occupy Denver," "Occupy Eugene," "Occupy Philadelphia," "Occupy Buffalo," "Occupy Las Vegas," "Occupy Charlotte," "Occupy Pittsburgh," "Occupy Dallas," "Occupy Houston," "Occupy Chicago," "Occupy Washington," "Occupy Washington DC," and "Occupy K."[10] *Id. ¶ 36.* These searches produced 454 pages of potentially responsive records, of which FBI determined twelve were responsive. *Id.*

Mr. Shapiro claims that FBI's searches were inadequate. He accuses FBI of "ignor[ing] all of the leads that were turned up by the documents," failing to produce documents that were referenced in the unredacted portions of the records he received from FBI (*i.e.*, an "IIR," and an email referenced on an "iWatch Report"), insufficiently describing the search

---

[10] The adequacy of the 2011 search that FBI references was litigated in *Truthout v. Department of Justice* (*Truthout I*), Civ. No. 12-1660 (RMC), 2013 WL 3742496 (D.D.C. July 17, 2013), and *Truthout v. Department of Justice* (*Truthout II*), Civ. No. 12-1660 (RMC), 2013 WL 5630250 (D.D.C. Oct. 16, 2013). This Court concluded that "FBI conducted good faith, reasonable searches of the systems of records likely to possess records responsive to [p]laintiffs' requests," *Truthout II*, 2013 WL 5630250, at *1, and denied plaintiff's motion for reconsideration, *id.* at *4.

15

conducted for Request No. 1205920-001, and using the "patently unreasonable" search term "law enforcement responses and Occupy Houston" in connection with Request No. 1206188-000. Opp'n at 31-32. As revealed by Mr. Hardy's Supplemental Declaration, many of Mr. Shapiro's claims are factually inaccurate.

Mr. Hardy states that FBI did, in fact, conduct follow-on searches. Supp. Hardy Decl. ¶¶ 8-12. For instance, he affirms that FBI initially searched for "law enforcement responses and Occupy Houston" in connection with Request No. 1206188-000, but subsequently used the broader search term: "Occupy Houston." *Id.* ¶ 11. He also states that FBI released to Mr. Shapiro the "IIR and iWatch Report that are mentioned in Shapiro-11 and 13," Supp. Hardy Decl. ¶ 8, and that any additional documents would have been located through FBI searches if they had been indexed, *id.* ¶¶ 9-10.

Likewise, Mr. Shapiro's claim that the Hardy Declaration insufficiently describes the search undertaken for Request No. 1205920-001 is without merit upon review of the Supplemental Declaration. Mr. Hardy initially stated that FBI "reviewed the highlighted portions of [Mr. Shapiro's] request again and contacted the appropriate unit [that] handles the reports referenced in the FBI document attached to [Mr. Shapiro's] request." Hardy Decl. ¶ 34. In his Supplemental Declaration, Mr. Hardy clarifies that RIDS "contacted the appropriate unit" *in relation to* the IRR and iWatch Report, which apparently were referenced in the documents that Mr. Shapiro attached to Request No. 1205920-001 and highlighted. Supp. Hardy Decl. ¶ 10. Mr. Hardy adds that "[a]ny other additional documents would have been located through . . . FBI's reasonable search of the CRS as described" in his initial Declaration.[11] *Id.*

---

[11] The Court notes that Mr. Hardy's initial Declaration does not explicitly state that FBI searched CRS in connection with Request No. 1205920-001. However, upon closer inspection of the record before the Court, it is clear that FBI conducted such a search. The confusion stems from

Thus, contrary to Mr. Shapiro's contentions, the Hardy Declarations establish that all of FBI's searches were reasonably calculated to discover requested documents. *SafeCard*, 926 F.2d at 1200-01; *Meeropol*, 790 F.2d at 950-51. FBI was not required to search every record system; it was only required to conduct a reasonable search of those systems of records *likely* to possess the requested information. *Oglesby*, 920 F.2d at 68. Here, FBI exceeded this standard. In responding to Request No. 1206188-000, FBI took the additional step of conducting a text search of ECF for more than forty search terms from another Occupy-related FOIA case. In short, all three of FBI's searches were adequate.

### C. Claimed Exemptions

Following a reasonable search, an agency may lawfully withhold records that are exempt from release under FOIA. "[A]lthough FOIA strongly favors prompt disclosure, its nine enumerated exemptions are designed to protect those legitimate governmental and private interests that might be harmed by release of certain types of information." *August v. FBI*, 328 F.3d 697, 699 (D.C. Cir. 2003) (internal quotation marks and citation omitted). This is because

---

the imprecise wording used in the initial Hardy Declaration. Mr. Hardy's statement that FBI "reviewed the highlighted portions of [Mr. Shapiro's] request *again*" supposes that FBI reviewed the highlighted portions at some point earlier in time. Hardy Decl. ¶ 34 (emphasis added). Although Mr. Hardy does not spell it out explicitly, it is clear from the record that FBI, in fact, conducted a search for the highlighted portions of the document attached to Request No. 1205920-001 when it ran a search in connection with Request No. 1205920-000. This is because Request Nos. 1205920-000 and 1205920-001 overlap. Attached to both Requests were several previously released records, including an FBI document dated October 19, 2011. The only difference between the FBI document attached to Request No. 1205920-000 and the FBI document attached to Request No. 1205920-001 was that Mr. Shapiro highlighted certain paragraphs in the latter. Accordingly, when Mr. Hardy states that FBI "again" reviewed the highlighted portions of Mr. Shapiro's request, *id.*, he means to say that FBI already had searched for records responsive to the document as part of its response to Request No. 1205920-000. Rather than dismiss Request No. 1205920-001 as redundant, FBI took the extra step of reviewing the document "again" and contacting "the appropriate unit" that handles the IRR and iWatch reports. Thus, it is accurate to say that FBI searched CRS in responding to Request No. 1205920-001.

"disclosure, not secrecy, is the dominant objective of the Act." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976). Consequently, the exemptions are narrowly construed. *Tax Analysts*, 492 U.S. at 151.

## 1. Exemption 1

Information concerning matters of national security is exempt from disclosure under FOIA Exemption 1 so long as the information satisfies the substantive and procedural criteria set forth in an Executive Order. *See* 5 U.S.C. § 552(b)(1). The Executive Order applicable to the instant litigation is Executive Order 13,526, which President Obama issued on December 29, 2009. *See* Exec. Order. No. 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009).[12] It permits information to be classified if the following conditions are met:

> (1) an original classification authority is classifying the information;
>
> (2) the information is owned by, produced by or for, or is under the control of the United States Government;
>
> (3) the information falls within one or more of the categories of information listed in section 1.4 of [the] [O]rder; and
>
> (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

*Id.* § 1.1(a). In reviewing classification determinations under Exemption 1, the D.C. Circuit has repeatedly stressed that "substantial weight" must be accorded agency affidavits concerning the classified status of the records at issue. *See, e.g.*, *Krikorian v. Dep't of State*, 984 F.2d 461, 464 (D.C. Cir. 1993); *Military Audit Project*, 656 F.2d at 738. As the D.C. Circuit has cautioned,

---

[12] Executive Order 13,526 revoked Executive Order 13,292 and Executive Order 12,958. *See id.* § 6.2(g).

"[j]udges . . . lack the expertise necessary to second-guess . . . agency opinions in the typical national security FOIA case." *Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980).

Mr. Shapiro does not dispute that the Hardy Declaration establishes that Mr. Hardy is a proper classifying authority, *see* Hardy Decl. ¶ 2, or that the information redacted is "under the control of the United States Government," *id.* ¶ 47. Nor does Mr. Shapiro quibble with Mr. Hardy's sworn averment that the withheld information falls within subsection (c) of section 1.4 because it concerns "'intelligence activities (including covert action), intelligence sources or methods, or cryptology.'" *Id.* ¶ 48 (quoting Exec. Order No. 13,526, § 1.4(c)). Instead, Mr. Shapiro challenges the adequacy of the Hardy Declaration's description of withheld information, both in terms of the context and nature of the information, as well as the consequences that reasonably will flow from disclosure.

Relying primarily on *King v. United States Department of Justice*, 830 F.2d 210 (D.C. Cir. 1987), Mr. Shapiro identifies several alleged deficiencies in the Hardy Declaration. Mr. Shapiro contends that the Hardy Declaration does not provide sufficient context for the redactions. He also suggests that FBI's limited reliance on Exemption 1 means, *a fortiori*, that "additional context can be provided without harming national security." Opp'n at 5. Further, Mr. Shapiro argues that the Hardy Declaration's description of the withholding of intelligence activities, methods, and sources already has been found to be inadequate under *King*, *see* 830 F.2d at 222 & n.93 (deeming insufficient a short, generic paragraph addressing the meaning of intelligence methods or activities), so that Mr. Hardy's description of the potential harm to national security resulting from disclosure is so categorical that it neither "correlate[s] particular reasons with particular redactions," Opp'n at 7 (citing *Branch v. FBI*, 658 F. Supp. 204, 208

(D.D.C. 1987)), nor establishes a "'logical nexus between disclosure . . . and damage to the national security,'" Opp'n at 8 (alteration in original) (quoting *King*, 830 F.2d at 223). Finally, Mr. Shapiro accuses FBI of cutting-and-pasting language from affidavits prepared for other FOIA lawsuits, instead of preparing a case-specific declaration. *See* Opp'n at 9-16 (comparing the initial Declaration to affidavits produced in four other FOIA lawsuits). Mr. Shapiro concludes that the size and location of the redactions constitute contrary record evidence that the withheld information might concern "detailed intelligence activities." Hardy Decl. ¶ 53.

Mr. Shapiro's argument pulls *King* from its moorings and generally misreads D.C. Circuit precedent. Although *King* reproved affidavits premised on "[c]ategorical description[s] of redacted material coupled with categorical indication[s] of anticipated consequences of disclosure," *id.* at 224, it neither indicated that a limited invocation of Exemption 1 necessarily undermines withholding information nor suggested that all précis of withheld information are insufficient. Rather, the D.C. Circuit directed that an agency need only provide "as much information as possible *without thwarting the exemption's purpose*." *Id.* (emphasis added). More recently, the D.C. Circuit has underscored the deferential nature of judicial review in FOIA cases involving matters of national security. Once an agency supports a national security exemption with statements that:

> contain reasonable specificity of detail as to demonstrate that the withheld information logically falls within the claimed exemption and evidence in the record does not suggest otherwise, . . . the court *should not* conduct a more detailed inquiry to test the agency's judgment and expertise or to evaluate whether the court agrees with the agency's opinions.

*Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009) (emphasis added). To be sure, conclusory affidavits with "vague or sweeping" statements are insufficient. *Id.* at 864. But,

where the agency's affidavit satisfies the *Larson* standard, the Circuit has "consistently deferred to executive affidavits predicting harm to the national security[] and . . . found it unwise to undertake searching judicial review." *Id.* at 865 (internal quotation marks and citation omitted).

Contrary to Mr. Shapiro's contentions, the Hardy Declaration is sufficiently detailed for these purposes. It defines what constitutes an intelligence activity or method, Hardy Decl. ¶ 49, and describes with reasonable detail the information withheld so as to demonstrate that Exemption 1 applies without revealing the exact information at issue, *id.* ¶ 50. Mr. Hardy also reports that he determined that the withheld information was properly classified "Secret" because its unauthorized disclosure reasonably could be expected to cause serious damage to national security,[13] *id.* ¶ 47, and describes several concrete and logical harms to national security that reasonably may result if the information were disclosed, *id.* ¶ 51. The Hardy Declaration is sufficiently tailored to Mr. Shapiro's document requests, even if parts of it have been relied upon in other cases. *See Coldiron v. U.S. Dep't of Justice*, 310 F. Supp. 2d 44, 45 (D.D.C. 2004) (analyzing whether an FBI declaration's discussion of Exemption 1 was mere boilerplate, noting that "[t]he mere fact of repetition is not, in itself, important"). Similarly, there is no basis in precedent or logic for the proposition that the location or size of a redaction contradicts a sworn statement on the need to keep the information classified.

In reality, Mr. Shapiro's issue with the Hardy Declaration is that it does not reveal the information he wants. *See* Opp'n at 8 (faulting the Hardy Declaration because its "description of the agency's invocation of Exemption 1 contains no specific reference to the subjects of Mr. Shapiro's requests . . ."). But that is the point of Exemption 1. *See* Supp. Hardy

---

[13] "National security," as defined in § 6.1(cc) of Executive Order 13,526, means "the national defense or foreign relations of the United States."

Decl. ¶ 15 ("To further explain the material that is being protected by Exemption (b)(1) would reveal the very nature of the information . . . FBI is trying to protect.").  Disclosure of matters of national security is uniquely within the purview of the Executive Branch.  That FBI did not disclose what might appear to be minor details about plots against Occupy Houston leadership or law enforcement's response to Occupy Houston protests is not consequential.  What may seem like minor details to a person outside law enforcement, in reality, "may reveal more information than their apparent insignificance suggests because, much like a piece of jigsaw puzzle, [each detail] may aid in piecing together other bits of information even when the individual piece is not of obvious importance in itself. . . ."  *Larson*, 565 F.3d at 864 (alterations in original); Hardy Decl. ¶ 54 (stating that "each piece of information was evaluated with careful consideration given to the impact that disclosure of this information will have on other sensitive information contained elsewhere in the United States intelligence community's files").  The two declarations from Mr. Hardy give the Court no reason to second-guess FBI's decision to withhold certain information under Exemption 1, even if such second-guessing were appropriate.  Neither Hardy Declaration is contradicted by the record or undermined by any hint of agency bad faith.  Accordingly, they are due substantial weight.  Mr. Shapiro's challenge to FBI's reliance on Exemption 1 is without merit.

### 2.  Exemption 3

Exemption 3 protects records that are "specifically exempted from disclosure by statute . . . if that statute . . . requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or . . . establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5. U.S.C. § 552(b)(3)(A).  If the relevant

statute was enacted *after* October 28, 2009, the enactment date of the OPEN FOIA Act of 2009, then the statute must specifically cite Exemption 3. *Id.* § 552(b)(3)(B).

Exemption 3, therefore, is unlike other FOIA exemptions. "[I]ts applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage." *Goland*, 607 F.2d at 350; *Ass'n of Retired R.R. Workers v. U.S. R.R. Ret. Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987). FBI "need only show that the statute claimed is one of [the] exemption[s] as contemplated by Exemption 3 and that the withheld material falls within the statute." *Larson*, 565 F.3d at 868 (citing *Fitzgibbon v. CIA*, 911 F.2d 755, 761-62 (D.C. Cir. 1990)).

The statute relevant to this discussion is the National Security Act of 1947, 50 U.S.C. §§ 3001 *et seq.*, as amended by the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. 108-458, 118 Stat. 3638 (2004). The National Security Act provides that the "Director of National Intelligence[14] shall protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 403-1(i)(1).[15] It also directs DNI to "establish and implement guidelines for the intelligence community" for, *inter alia*, "[c]lassification of information under applicable law, Executive orders, or other Presidential directives" and "[a]ccess to and dissemination of intelligence . . . ." *Id.* § 403-1(i)(2).[16] FBI is a member of the

---

[14] The Director of National Intelligence (DNI) has assumed certain duties previously delegated to the Director of Central Intelligence. *See Wolf*, 473 F.3d at 377 n.6.

[15] This section has been transferred to 50 U.S.C. § 3024(i)(1).

[16] This section has been transferred to 50 U.S.C. § 3024(i)(2)(A)-(B).

intelligence community.  *Id.* § 401a(4)(H).[17]  Accordingly, FBI correctly construes the National

Security Act as a federal statute that leaves it with "no discretion [in] . . . withholding from the

public information about intelligence sources and methods."  Hardy Decl. ¶ 58 (citing *CIA v.

Sims*, 471 U.S. 159 (1985)).  It is well established that the National Security Act is "'precisely

the type of statute[] comprehended by [E]xemption 3.'"  *Schoenman v. FBI*, Civ. No. 04-2202,

2009 WL 763065, at *24 (D.D.C. Mar. 19, 2009) (quoting *Goland*, 607 F.2d at 349) (other

citations omitted); *see Sims*, 471 U.S. at 167 (recognizing that the provision of the National

Security Act that directs DNI to protect intelligence sources and methods from unauthorized

disclosure "'clearly refers to particular types of matters,'" 50 U.S.C. § 552(b)(3), and thus,

"qualifies as a withholding statute under Exemption 3"); *Valfells v. CIA*, 717 F. Supp. 2d 110,

116 (D.D.C. 2010) (noting that the National Security Act has "been recognized as [an]

exempting statute[] for the purposes of Exemption 3"), *aff'd*, *Moore v. CIA*, 666 F.3d 1330 (D.C.

Cir. 2011).

>        FBI also has demonstrated that the withheld information falls within the National

Security Act.  FBI invoked Exemption 3 in conjunction with Exemption 1 which, as discussed

*supra*, concerns intelligence activities and methods.  The Hardy Declarations have provided

sufficient information to show that Exemption 3 applies for the same reason that Exemption 1

applies, as the withheld information "relate[s] to intelligence sources and methods utilized in the

investigations at issue."  Supp. Hardy Decl. ¶ 16.[18]

---

[17] This section has been transferred to 50 U.S.C. § 3003(4)(H).

[18] This averment in the Supplemental Declaration, along with footnote 10 in the original
Declaration, *see* Hardy Decl. ¶ 60 n.10, moots Mr. Shapiro's complaint that Mr. Hardy describes
"intelligence activities," but not sources or methods, Opp'n at 18.  Assuming *arguendo* that
"intelligence activities" do not encompass "intelligence sources or methods," it is clear from both

Mr. Shapiro counters that *Sims*, 471 U.S. 159, and *ACLU*, 628 F.3d 612, require FBI to connect the sources and methods it wishes to protect to "foreign intelligence," Opp'n at 18, which he contends it has not done. Yet, neither *Sims* nor *ACLU* stands for this proposition. "*Sims* itself actually involved domestic educational institutions and researchers." *Fitzgibbon*, 911 F.2d at 764-65. It "unequivocally held that the Director of Central Intelligence may protect *all intelligence sources, regardless of their provenance*." *Id.* at 762 (emphasis added). *ACLU* does not hold differently. FBI's invocation of Exemption 3 was proper.

### 3. Exemption 6

FBI withheld information under Exemption 6, which protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The Exemption 6 analysis has two components: (1) whether the information at issue is contained in personnel, medical, or similar files and (2) whether disclosure would constitute a clearly unwarranted invasion of personal privacy. "The term 'similar files' is broadly interpreted, such that Exemption 6 protects from disclosure all information that 'applies to a particular individual' in the absence of a public interest in disclosure." *Lardner v. Dep't of Justice*, 638 F. Supp. 2d 14, 23 (D.D.C. 2009) (quoting *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982)), *aff'd*, 398 F. App'x 609 (D.C. Cir. 2010). The threshold is "fairly minimal," and "[a]ll information which 'applies to a particular individual' is covered by Exemption 6, regardless of the type of file in which it is contained." *Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 260 (D.C. Cir. 1982) (quoting *Wash. Post*, 456 U.S. at 602).

---

the Declarations and the markings on the released documents that the information redacted under Exemption 3 is the same as the information redacted under Exemption 1.

Exemption 6 requires a court to balance the individual's privacy rights against the basic purpose of FOIA—"to open agency action to the light of public scrutiny." *Rose*, 425 U.S. at 372 (internal quotation marks and citation omitted); *see also Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999). Under Exemption 6, the privacy interest at stake belongs to the individual, not to the agency. *See Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989) (noting an individual's significant privacy interest "in avoiding the unlimited disclosure of his or her name and address"). It is the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004) (interpreting analogous Exemption 7(C)).

Here, FBI withheld certain records otherwise responsive to Mr. Shapiro's Requests on the ground that Exemption 6 applies. Hardy Decl. ¶¶ 63-72. Specifically, FBI withheld the names and identifying information of the following individuals: (1) federal and state law enforcement officers and personnel, *id.* ¶¶ 65-67; (2) third parties who provided information to FBI, *id.* ¶¶ 68-69; (3) third parties mentioned in the responsive records, *id.* ¶ 70; and (4) a non-FBI federal employee, *id.* ¶¶ 71-72. Mr. Shapiro only challenges FBI's decision to withhold the names and identifying information of third parties who provided information to FBI, and only does so to the extent that FBI relies on Exemption 7(C). Accordingly, Mr. Shapiro has waived any argument as to the applicability of Exemption 6. *See CSX Transp., Inc. v. Commercial Union Ins., Co.*, 82 F.3d 478, 482-83 (D.C. Cir. 1996); *see also Hopkins v. Women's Div., Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002).

### 4. Exemption 7 Generally

FOIA Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . ." would cause certain enumerated harms.  5 U.S.C. § 552(b)(7).  In order to withhold materials properly under Exemption 7, an agency must establish both that the records at issue were compiled for law enforcement purposes, and that the material satisfies the requirements of one of the six subparts of Exemption 7.  *See Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982).  Thus, the D.C. Circuit has established a two-part, objective test whereby the government can show that its records are law enforcement records:

> *Pratt* requires, first, that the agency identify a particular individual or a particular incident as the object of its investigation and specify the connection between that individual or incident and a possible security risk or violation of federal law.  The agency must then demonstrate that this relationship is based on information sufficient to support at least a colorable claim of the connection's rationality.  This inquiry, while necessarily deferential, is not vacuous.   In order to pass the FOIA Exemption 7 threshold, . . . an agency must establish that its investigatory activities are realistically based on a legitimate concern that federal laws have been or may be violated or that national security may be breached.  Either of these concerns must have some plausible basis and have a rational connection to the object of the agency's investigation.

*King*, 830 F.2d at 229-30 (alterations in original) (internal quotation marks and citations omitted).  The upshot of this two-part test is that, in assessing whether records were compiled for law enforcement purposes, the "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding."  *Jefferson v. Dep't of Justice, Office of Prof'l Responsibility*, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (internal quotation marks and citations

omitted). For instance, records compiled "in connection with investigations that focus directly on specific alleged illegal acts which could result in civil or criminal sanctions" are records compiled for law enforcement purposes, as distinguished from records compiled in connection with the government's "customary surveillance" of its employees' performances. *Id.* at 177 (citing *Rural Housing Alliance v. Dep't of Agric.*, 498 F.2d 73, 81 (D.C. Cir. 1974)). It should be noted, however, that the investigation need not "lead to a criminal prosecution or other enforcement proceeding in order to satisfy the 'law enforcement purpose' criterion." *Pratt*, 673 F.2d at 421.

Mr. Shapiro contends that the Hardy Declaration does not satisfy either prong of *Pratt*. He argues that FBI has not established that it actually conducted an investigation into criminal acts, specified the particular individual or incident that was the object of its investigation, adequately described the documents it is withholding under Exemption 7, or sufficiently connected the withheld documents to a specific statute that permits FBI to collect information and investigate crimes. Mr. Shapiro further alleges that FBI has failed to state a rational basis for its investigation or connection to the withheld documents, which he describes as overly-generalized and not particular.

On the latter point, the Court agrees. Mr. Hardy's averments are too generalized for purposes of Exemption 7. He states that any responsive records located by FBI "concern documents compiled as a result of assistance FBI rendered to various state and local law enforcement agencies which were investigating potential criminal activity by protestors [sic] involved with the 'Occupy' movement in Houston." Supp. Hardy Decl. ¶ 18. Further, Mr. Hardy states that FBI maintained the records pursuant to FBI's "general investigative authority

per 28 U.S.C. §§ 533 and 534," and its "lead role in investigating terrorism and in the collection of terrorism threat information," Supp. Hardy Decl. ¶ 17 (internal quotation marks and citation omitted). He adds that FBI, acting in concert with state and local law enforcement agencies, compiled these records while assessing the protests for potential terrorist threats, including domestic terrorism in violation of 18 U.S.C. § 2331, and other criminal activity, such as advocating the overthrow of the government in violation of 18 U.S.C. § 2385. *Id.* ¶¶ 18, 20. At no point does Mr. Hardy supply specific facts as to the basis for FBI's belief that the Occupy protestors might have been engaged in terroristic or other criminal activity. *Cf. Quinon v. FBI*, 86 F.3d 1222, 1229 (D.C. Cir. 1996) (rejecting FBI's invocation of Exemption 7 where the affidavits proffered in support of FBI's motion for summary judgment "simply allude to 'certain events,' which [FBI] fail[s] to describe or characterize"). Neither the word "terrorism" nor the phrase "advocating the overthrow of the government" are talismanic, especially where FBI purports to be investigating individuals who ostensibly are engaged in protected First Amendment activity.

Accordingly, the Hardy Declarations do not provide enough specificity such that the Court can say that FBI has established a "colorable claim of rationality," *Pratt*, 673 F.2d at 420, between the object of its investigation and its asserted law enforcement duties, *id.* at 421. FBI will be directed to explain its basis for withholding information pursuant to Exemption 7. To the extent that FBI believes it cannot be more specific without revealing the very information it wishes to protect, it may request an *in camera* review of the documents. *See Simon v. Dep't of Justice*, 980 F.2d 782, 784 (D.C. Cir. 1992) ("In [the] unusual circumstance, where the agency cannot describe the document fully enough to show that it is exempt from disclosure without in

the course of doing so disclosing the very information that warrants exemption, the solution is for the court to review the document in camera.").[19]

### D. Segregability

If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after redacting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. 5 U.S.C. § 552(b); *see Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999). A court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. U.S. Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (internal quotation marks and citation omitted). Mr. Shapiro argues that FBI failed to release reasonably segregable material.

Certain redacted materials were provided to Mr. Shapiro and other materials were withheld in full. *See* Hardy Decl. ¶ 38 (FBI sought to achieve "maximum disclosure" by releasing all material in the public domain and all reasonably segregable material); *id.* ¶¶ 39-41 (explaining FBI's description of documents by Bates number and by the applicable FOIA exemption). Mr. Hardy explains that material that was withheld was exempt from disclosure or was so intertwined with protected material that segregation was not possible. Hardy Decl. ¶ 43; Supp. Hardy Decl. ¶ 13. Mr. Shapiro claims that FBI has "analyze[d] the segregability of the redacted documents . . . in conclusory fashion." Opp'n at 32. The Court disagrees. It has reviewed FBI's declarations and finds that these submissions adequately specify "which portions

---

[19] Because the Court finds that FBI has not satisfied the threshold standard for Exemption 7, it will not address at this time FBI's reliance on Exemptions 7(A), 7(C), 7(D), or 7(E).

of the document[s] are disclosable and which are allegedly exempt." *See Vaughn*, 484 F.2d at 827.[20]

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss or for Summary Judgment, Dkt. 9, will be granted in part and denied in part. The Court will grant Mr. Shapiro's Motion to File a Surreply, Dkt. 15, and deny as moot his Motion for Oral Argument, Dkt. 14. A memorializing Order accompanies this Opinion.


_____/s/_____
ROSEMARY M. COLLYER
United States District Judge

Date: March 12, 2014

---

[20] On August 30, 2013, one month after briefing in the instant litigation was complete, Mr. Shapiro filed a Motion for Leave to File Surreply. The Court will grant the Motion. It has reviewed the Surreply and finds no need for a further response from FBI.