UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **RYAN NOAH SHAPIRO,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 13-595 (RMC) |
| ) | |
| **U.S. DEPARTMENT OF JUSTICE,** ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Ryan Noah Shapiro brings suit against the Federal Bureau of Investigation (FBI) under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, seeking the release of any records held by the FBI that relate to "Occupy Houston," an offshoot of the protest movement and New York City encampment known as "Occupy Wall Street." On March 12, 2014, the Court granted in part and denied in part FBI's motion to dismiss or for summary judgment, directing FBI to provide more specificity for its withholding certain records pursuant to FOIA Exemption 7. *See Shapiro v. U.S. Department of Justice* (*Shapiro I*), Civ. No. 13-595, 2014 WL 953270 (D.D.C. Mar. 12, 2014).[1] FBI subsequently submitted to the Court a supplemental memorandum and declaration in support of its withholding decisions, as well as the records at

---

[1] Mr. Shapiro also sued under the Privacy Act (PA), 5 U.S.C. § 552a, but the Court deemed that claim waived in its prior decision. *See id.* at *4, 14 n.8.

issue. After conducting an *in camera* and *ex parte* review of the records, the Court will grant FBI's Motion and dismiss this case.[2]

## I. FACTS

Inasmuch as *Shapiro I* set forth much of the factual and procedural background relevant here, the Court assumes familiarity with that decision and draws liberally from it. To summarize, Mr. Shapiro is a doctoral candidate at the Massachusetts Institute of Technology. He seeks records generally concerning Occupy Houston as well as records regarding an alleged plot by unidentified actors to assassinate the leaders of Occupy Houston. Upon receiving Mr. Shapiro's FOIA requests, FBI conducted a records search, identified seventeen pages of responsive records, produced five of those pages in part and entirely withheld twelve pages under FOIA Exemptions 1, 3, 6, 7(A), 7(C), 7(D), and 7(E). *Id.* at *2-3. In *Shapiro I*, the Court found that FBI had conducted adequate searches for responsive records, had properly withheld records under Exemptions 1, 3, and 6, and could not reasonably segregate non-exempt information. *Id.* at *10, 12, 14. The Court also found that FBI's affiant had spoken in generalities without sufficient specifics to explain the applicability of Exemption 7, on which it partially relied to withhold some or all of some records. *Id.* at *13-14. The Court, therefore, directed FBI to provide more specificity on this point.

The Court's initial decision was issued on March 12, 2014. On April 9, 2014, the FBI filed a Supplemental Memorandum [Dkt. 21] which also included a Third Declaration of David M. Hardy, Section Chief of FBI's Record/Information Dissemination Section (RIDS),

---

[2] FBI is a component of the Department of Justice (DOJ). While DOJ is the proper defendant in the instant litigation, the only records at issue here are FBI records. For ease of reference, this Opinion refers to FBI as Defendant.

Records Management Division (Third Hardy Decl.) [Dkt. 21-1]. Mr. Shapiro filed a Response on April 24, 2014 [Dkt. 23] and a Notice of Supplemental Authority on May 8, 2014 [Dkt. 24]. By Minute Order entered on June 4, 2014, the Court directed FBI to submit the records in dispute for *in camera* and *ex parte* review. These were submitted on June 28, 2014 [Dkt. 25] and Mr. Shapiro filed a Second Notice of Supplemental Authority on October 27, 2014 [Dkt. 26].

## II. LEGAL STANDARDS and ANALYSIS

In *Shapiro I*, this Court denied FBI's motion to dismiss on grounds of mootness and failure to state a claim. Thus, the only remaining question in this case is whether FBI's motion for summary judgment is warranted based on its claim that it properly withheld information requested by Mr. Shapiro under FOIA Exemption 7.

### A. Motion for Summary Judgment

Summary judgment is justified when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A motion under Rule 56 is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, a court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "[t]he mere existence of a scintilla of evidence" in support of its position. *Id.* at 252.

FOIA cases are typically and appropriately decided on motions for summary judgment. *Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993); *Rushford v. Civiletti*, 485 F. Supp. 477, 481 n.13 (D.D.C. 1980), *aff'd*, *Rushford v. Smith*, 656 F.2d 900 (D.C. Cir. 1981). In a FOIA case, a court may award summary judgment solely on the basis of information provided by the agency in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973) (requiring agencies to prepare an itemized index correlating each withheld document, or portion thereof, with a specific FOIA Exemption and the relevant part of the agency's nondisclosure justification). An agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt" from FOIA's requirements. *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal quotation marks and citation omitted).

### B. FOIA Exemption 7[3]

#### 1. Exemption 7 Generally

FBI claims that the redacted and withheld records are subject to Exemptions 7(A), (C), (D), and (E). "To fall within any of the exemptions under the umbrella of Exemption 7, a record must have been 'compiled for law enforcement purposes.'" *Public Employees for Envtl.*

---

[3] Because the Court concluded in *Shapiro I* that the FBI conducted an adequate, reasonable, and good faith search in accordance with FOIA requirements, *see id.* at *7-8, the general legal standards for FOIA cases will not be reiterated here.

*Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n*, 740 F.3d 195, 202 (D.C. Cir. 2014) (quoting 5 U.S.C. § 552(b)(7)); *see also Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982).  The D.C. Circuit has established a two-part, objective test whereby the government can show that its records are law enforcement records:

> *Pratt* requires, first, that the agency identify a particular individual or a particular incident as the object of its investigation and specify the connection between that individual or incident and a possible security risk or violation of federal law.  The agency must then demonstrate that this relationship is based on information sufficient to support at least a colorable claim of the connection's rationality.
>
> This inquiry, while necessarily deferential, is not vacuous. In order to pass the FOIA Exemption 7 threshold, . . . an agency must establish that its investigatory activities are realistically based on a legitimate concern that federal laws have been or may be violated or that national security may be breached. Either of these concerns must have some plausible basis and have a rational connection to the object of the agency's investigation.

*King v. United States Dep't of Justice*, 830 F.2d 210, 229-230 (D.C. Cir. 1987*)* (alterations in original) (internal quotation marks and citations omitted).  The upshot of this two-part test is that, in assessing whether records were compiled for law enforcement purposes, the "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding."  *Jefferson v. Dep't of Justice, Office of Prof'l Responsibility*, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (internal quotation marks and citations omitted).  For instance, records compiled "in connection with investigations that focus directly on specific alleged illegal acts which could result in civil or criminal sanctions" are records compiled for law enforcement purposes, as distinguished from records compiled in connection with the government's "customary surveillance" of its employees' performances.  *Id.* at 177 (citing *Rural Housing Alliance v. Dep't of Agric.*, 498 F.2d

5

73, 81 (D.C. Cir. 1974)).  It should be noted, however, that the investigation need not "lead to a criminal prosecution or other enforcement proceeding in order to satisfy the 'law enforcement purpose' criterion."  *Pratt*, 673 F.2d at 421.

FBI's initial explanations for its reliance on Exemption 7 "failed to state a rational basis for its investigation or [any] connection to the withheld documents" because its declarations did not "supply specific facts as to the basis for FBI's belief that the Occupy protestors might have been engaged in terroristic or other criminal activity."  *Shapiro I*, 2014 WL 953270, at *13.  In response to this Court's holding, the FBI Record/Information Dissemination Section reexamined the 17 pages at issue and submitted a third declaration from Mr. Hardy.  *See* Third Hardy Decl. ¶ 3.  Mr. Hardy's third declaration makes plain that while his prior declarations may not have clearly demonstrated the capacity in which law enforcement capacity were compiled, FBI was investigating potential criminal activity in various cities by or against protestors in the Occupy movement.  He states:

> While this material was generally compiled "concerning potential investigations into criminal act <u>regarding</u> the 'Occupy' movement in Houston" (*See* First Hardy Declaration, ¶ 22.) . . . and "potential criminal activity by protestors." (*See* Second Hardy Declaration, ¶ 18.), these cautious generalizations may have triggered the unintended and regrettable conclusion that the protestors themselves, or the protest movement, were the focus of investigative inquiry.  In fact, the actual identity of the alleged perpetrators is unknown.  A more precise generalized statement would have been that the responsive material was compiled while investigating potential criminal acts regard the "Occupy" movement in Houston, along with other cities, including potential criminal activity by <u>or</u> against protestors . . . .

*Id*. ¶ 3 (emphases in original).  More specifically, as to Occupy Houston, Mr. Hardy states:

> In this particular case, the specific nature for the compilation of these records relates to the *investigation of threats made against those participating in the protests* or reports received from a Confidential

6

>Human Source ("CHS") of other potential attacks against certain targets
>or entities.

*Id.* (emphasis added). Further, Mr. Hardy specifies that the records with Bates-stamps Shapiro 1-3 and 10-17 "pertain to the investigation of and sharing of criminal intelligence related to terroristic threats and/or reports of potential violence against protest participants." *Id.* ¶ 4.a. Those records with Bates-stamps Shapiro 4-8 "pertain to specific criminal intelligence related to planned infrastructure attacks against identified targets/entities by criminal elements reported by an FBI CHS." *Id.* ¶ 4.b.[4] To emphasize his points, Mr. Hardy then declares that "[t]he FBI specifies that the records at issue were compiled to investigate threats made against protestors participating in Occupy movements or potential infrastructure attacks against certain targets or entities received by a CHS." *Id.* ¶ 5. Having now reviewed the precise records, the Court finds that the Third Hardy Declaration sufficiently identifies them as compiled for law enforcement purposes and provides a legitimate basis for FBI's withholding under Exemption 7.

Mr. Shapiro's response, filed before the Court ordered an *in camera* and *ex parte* review of the records at issue, argues about the inconsistencies among the three Hardy Declarations and urges the Court to conduct its own review, "mindful of the somewhat confusing information in the record about which documents related to an investigation into criminal activity *by* the protestors and which related to an investigation into criminal activity *against* the protestors." Pl. Response [Dkt. 23] at 5. The Court has now conducted the requested review. Mr. Shapiro's first Notice of Supplemental Authority submitted a declaration by Mr. Hardy submitted in *Shapiro v. Dep't of Justice*, Civ No. 13-1139 (RBW) (filed May 5, 2014, D.D.C.),

---

[4] The record that is Bates-stamped Shapiro 9 does not mention any Occupy protests in Houston, Texas and is not responsive to Mr. Shapiro's request. Third Hardy Decl. ¶ 4 n.1.

in which Mr. Hardy stated that "the FBI determined that it had never opened an investigation on the Occupy movement." *Id.* This declaration is consistent with the record in this FOIA case now before the Court: FBI investigated threats against protesters and against infrastructure targets. Mr. Shapiro's second Notice of Supplemental Authority raises an alleged inconsistency regarding FBI's search for responsive records, a search that this Court has already deemed reasonable. This Supplemental Authority is not relevant to the only remaining issue in this case: FBI's reliance on FOIA Exemption 7.

Having reviewed the documents and concluded that FBI has met FOIA's threshold requirement of showing that the records were "complied for law enforcement purposes," the Court turns to whether the withheld records fall within any of the enumerated exemptions.

### 2. Exemption 7(A)

FOIA Exemption 7(A) authorizes an agency to withhold a record where its production "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). The agency must show that release of the records reasonably could be expected to cause some distinct harm to pending or imminent enforcement proceeding or investigation. *See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978); *Butler v. Dep't of Air Force*, 888 F. Supp. 174, 183 (D.D.C. 1995), *aff'd*, 116 F.3d 941 (D.C. Cir. 1997); *Kay v. FCC*, 976 F. Supp. 23, 39 (D.D.C. 1997), *aff'd*, 172 F.3d 919 (D.C. Cir. 1998). "Under exemption 7(A) the government is not required to make a specific factual showing with respect to each withheld document that disclosure would actually interfere with a particular enforcement proceeding." *Barney v. IRS*, 618 F.2d 1268, 1273 (8th Cir. 1980) (citation omitted). "Rather, federal courts

may make generic determinations that, 'with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally 'interfere with enforcement proceedings.'" *Id.* (quoting *Robbins Tire*, 437 U.S. at 236).

FBI argues that Exemption 7(A) applies to two documents in their entirety: the records that are Bates-stamped Shapiro 1-3 and Shapiro 14-17. These records are "intelligence reports," which are "text-based briefing[s] or information-sharing product[s], generally prepared for senior management officials to inform them about current threats." Second Hardy Decl. [Dkt. 13-1] ¶ 21. According to the special agent overseeing these investigations, "some of the information contained in these documents pertain to pending investigations which are currently being investigated with the assistance of active FBI sources. A premature release of this information will not only expose the source, but will reveal the target, focus, and scope of the investigation [thus] negatively impacting this ongoing investigation." *Id.* ¶ 22. Upon further review, the FBI determined that it was unable to segregate any non-exempt information "without negatively impacting the on-going proceedings." *Id.* ¶ 23. After conducting its own review, the Court agrees that the records labeled Shapiro 1-3 and Shapiro 14-17, as well as redactions in other documents subject to this exemption, were properly withheld under Exemption 7(A) given that releasing parts of the records could reasonably interfere with FBI enforcement proceedings by identifying suspects and sources, and by otherwise jeopardizing an open investigation.[5]

### 3. Exemption 7(C)

Exemption 7(C) exempts law enforcement material "to the extent that the production of such law enforcement records or information could reasonably be expected to

---

[5] FBI also argues, and the Court agrees, that information in these records is subject to Exemption 7(D), which protects against the release of personal identifiers for confidential sources.

constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In assessing an agency's claim under exemption 7(C), the district court must weigh the privacy interests asserted against the public interest in disclosure. *Voinche v. FBI*, 412 F. Supp. 2d 60, 68 (D.D.C. 2006). However, as a general rule, third-party identifying information contained in such records is "categorically exempt" from disclosure. *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995); *Mays v. Drug Enforcement Admin.*, 234 F.3d 1324, 1327 (D.C. Cir. 2000) ("Absent exceptional circumstances, the balance categorically favors withholding the names and addresses of third parties . . . ."). In addition, "[a]s a result of Exemption 7(C), FOIA ordinarily does not require disclosure of law enforcement documents (or portions thereof) that contain private information." *Blackwell v. FBI*, 646 F.3d 37, 41 (D.C. Cir. 2011) (citing cases). "The D.C. Circuit has consistently held that Exemption 7(C) protects the privacy interests of all persons mentioned in law enforcement records, including investigators, suspects, witnesses and informants, and has determined that such third-party information is categorically exempt from disclosure under [E]xemption 7(C), in the absence of an overriding public interest in its disclosure." *Shapiro v. DOJ*, Civ. No. 13-729 (PLF), 2014 WL 1280275, at *4 (D.D.C. Mar. 31, 2014) (quotations omitted).

FBI applied this exemption in conjunction with Exemption 6 to withhold names and/or identifying information of FBI Special Agents, FBI support personnel, third parties who provided information to FBI, third parties mentioned in the records, and non-FBI federal employees. Mr. Shapiro challenges only the names and/or identifying information of individuals who provided information to FBI, asserting that no privacy concern is implicated by releasing data about those individuals who could be called to testify as witnesses at trial. However, as set

10

forth in the Second Hardy Declaration, these individuals still have a "well recognized privacy interest" that is "not outweighed by any public interest in disclosure." Second Hardy Decl. ¶ 24. Recognizing "the stigma of being associated with any law enforcement investigation," Exemption 7(C) "affords broad privacy rights to those who are connected in any way with such an investigation unless a significant public interest exists for disclosure." *Shapiro*, 2014 WL 1280275, at *3 (citations omitted). "[U]nless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1206 (D.C. Cir. 1991). Here, Mr. Shapiro offers no evidence of misconduct, nor does he demonstrate any public interest that could outweigh the recognized privacy interests of the private individuals identified in the responsive records. The Court agrees with FBI that revealing the names of individuals associated with law enforcement activities could unnecessarily expose them to retaliation, embarrassment, or harassment. Accordingly, the Court concludes that the names of and identifying information about third parties is properly withheld under FOIA Exemption 7(C).

### 4. Exemption 7(D)

FOIA Exemption 7(D) allows the withholding of records if their disclosure "could reasonably be expected to disclose the identity of a confidential source. . . ." 5 U.S.C. § 552(b)(7)(D). "[I]n the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation," the agency may also withhold "information furnished by a confidential source." *Id.* A confidential source includes "a State, local, or foreign

agency or authority or any private institution which furnished information on a confidential basis." *Id.* The "paramount objective" of this exemption "is to keep open the Government's channels of confidential information." *Birch v. U.S. Postal Serv.*, 803 F.2d 1206, 1212 (D.C. Cir. 1986).

Whether or not a source or the information provided is subject to Exemption 7(D) depends on "whether the particular source spoke with an understanding that the communication would remain confidential." *Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993) (emphasis in original). "A source is confidential within the meaning of exemption 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (internal quotation and citation omitted). An implied assurance of confidentiality may be inferred from evidence showing the circumstances surrounding the imparting of the information, including the nature of the crime and the informant's relationship to the crime. *Landano*, 508 U.S. at 179.

Mr. Shapiro argues that information redacted by FBI on the grounds of implied confidentiality is improper because FBI has not clearly established the nature of the crime at issue or the source's relationship to the information. Further, he contends there is "no evidence that fear of the group at issue (or type of group) is 'so widespread to justify an inference that sources of information relating to' their activities can expect their identities and the information they provide to be kept confidential." Pl. Opp. at 29 (quoting *Computer Prof'ls for Soc. Responsibility v. Secret Serv.*, 72 F.3d 897, [906] (D.C. Cir. 1996)). However, FBI has articulated that the names and information withheld on the basis of implied confidentiality are from "individuals who are members of organized violent groups" that "come into contact with criminal elements and share information

12

that such elements believe is not intended for disclosure to law enforcement." Second Hardy Decl. ¶ 26. Mr. Hardy explains that "[i]nformation provided by these sources is singular in nature due to their source closeness with criminal elements" and "[w]ith all certainty, these individuals will not share this information with any law enforcement agency if they are aware that their identities and the information they provided will be further disclosed." *Id.*

Based on these statements and a review of the documents, the Court finds that Exemption 7(D) applies to protect the names of and information about individuals whose relationship to criminal activity stems from their involvement in "organized violent groups." As members of these violent groups, the sources could reasonably expect retaliation unless their activities were kept confidential, particularly in light of the fact that the groups believe such information should not be shared with law enforcement agencies.

### 5. Exemption 7(E)

Exemption 7(E) protects the disclosure of records or information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). "Exemption 7(E)'s requirement that disclosure risk circumvention of the law 'sets a relatively low bar for the agency to justify withholding.'" *Public Employees*, 740 F.3d at 204-05 (quoting *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011)). "To clear that relatively low bar, an agency must demonstrate only that release of a document might increase the risk 'that a law will be violated or that past violators will escape legal consequences.'" *Id.* at 205 (*Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)).

The first Hardy Declaration asserts that Exemption 7(E) applies to three types of investigative techniques and procedures: (1) case file numbers, based on a file numbering system that identifies the investigative interest or priority given to such matters; (2) collection and/or analysis of information, specifically the manner in which FBI applies and analyzes information for use in its investigations and intelligence purposes, which is not publicly known; and (3) law enforcement techniques utilized to conduct national security and intelligence investigations. First Hardy Decl. [Dkt. 9-1] ¶¶ 82-84. Mr. Shapiro argued that such descriptions are generic and offer no clear explanation as to what harm could result from disclosure. In response, Mr. Hardy clarified that "[r]evealing the techniques, potential targets of the techniques, and/or the nature of the information gleaned via their use in the context of this material would effectively reveal specifics of how, and in what settings the techniques are employed" and that as a result, "criminal targets would be better able to avoid detection by developing countermeasures to circumvent the ability of law enforcement officials to use the techniques, thus rendering them useless to the FBI and other law enforcement agencies." Second Hardy Decl. ¶ 27. Specifically, Mr. Hardy explains that revealing the titles of certain investigative units could alert individuals to a type of technique or activity used by FBI that might not necessarily be anticipated by criminal actors. *Id.* ¶ 28. Furthermore, addressing Mr. Shapiro's argument that some of the redactions made pursuant to Exemption 7(E) do not appear to fall into any of the enumerated categories, Mr. Hardy stated that the release of such information such as internal web addresses and phone numbers could lead to "massive, disruptive, and misleading amounts of communications as well as harassment and threats" and "could enable circumvention of the law by allowing criminals to gain access to internal communication channels used by the FBI to communicate internally." *Id.* ¶ 29. Considering both FBI's arguments and the documents themselves, the Court is

confident that FBI has met the "relatively low bar" of demonstrating how individuals could use the withheld information to circumvent the law either by altering their criminal behavior after learning of FBI's specific investigative techniques or by disrupting FBI activity.

### III. CONCLUSION

The Court finds that FBI properly cited FOIA Exemption 7, involving law enforcement records, as one reason for its partial denial of Mr. Shapiro's FOIA request into records concerning Occupy Houston. With the submission of the Third Hardy Declaration and its own *in camera* review of the contested records, the Court concludes that FBI's reliance on Exemption 7 was proper. The motion for summary judgment [Dkt. 9] will be granted and judgment will be entered in favor of Defendant. A memorializing Order accompanies this Opinion.

Date: February 2, 2015

/s/
ROSEMARY M. COLLYER
United States District Judge